**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marjorie Maghan, | No. CV-19-01768-PHX-MTM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Marjorie Maghan, on behalf of her deceased son, Luke William Maghan ("Claimant"), seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error, the Commissioner's decision will be vacated and remanded for further proceedings.

**I.  Background.**

On May 26, 2015, Claimant applied for disability insurance benefits and supplemental security income, alleging disability beginning June 6, 2014. After an initial denial and a request for reconsideration, on January 11, 2018, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 30, 2018, the ALJ issued a decision that Claimant was not disabled within the meaning of the Social Security Act. On November 2, 2018, Claimant passed away. (AR 20.) On January

25, 2019, the Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2019, and that he had not engaged in substantial gainful activity since June 6, 2014. At step two, the ALJ found that Claimant had the following severe impairments: "chronic back pain secondary to lumbago and lumbosacral spondylosis without myelopathy; obesity; left hip degenerative joint disease with labral tear repaired in November 2017; chronic pain syndrome; somatization disorder; major depression; generalized anxiety disorder; alcohol abuse, continuous; and amphetamine and opiate abuse, episodic." (AR 194.) At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Claimant had the RFC to perform:

light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: occasional climbing of ramps or stairs; no climbing of ladders, ropes and scaffolds; limited to performing simple, routine and repetitive tasks using judgment limited to simple and work-related decisions.

(AR 197.)

The ALJ further found that Claimant was unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Claimant could perform.

## IV.   Analysis.

Plaintiff argues the ALJ's decision is defective for four reasons: (1) the ALJ erred by failing to consider Claimant's proper mental impairment at step three; (2) the ALJ erred by failing to account for Claimant's somatization disorder in the ALJ's RFC determination; (3) the ALJ erred by finding Claimant's licensed psychologist, Ms. Lori Sternal LP/MA, to be "not an acceptable medical source[,]" and thus discounting a diagnosis of mental impairment from Ms. Sternal; and (4) the ALJ erred by failing to consider the statement of Claimant's mental health Case Manager, Jeremy Ruzic. (Doc. 13.) The Court will address each argument below.

**A.   The ALJ did not Err in Evaluating Plaintiff's Medical Impairments at Step Three.**

Plaintiff first argues that the ALJ erred by "failing to evaluate Plaintiff's mental impairment pursuant to the appropriate medical listing at step three[.]" (Doc. 13 at 5). Specifically, Plaintiff argues that the ALJ erred in his evaluation at step three because he "did not consider Listing 12.07[,]" which deals with somatic symptom and related disorders, "*at all*." (*Id.* at 6-7.) The Court disagrees.

At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii).[1] A claimant seeking to establish disability

---

[1] Under 20 C.F.R. § 404.1525, the listing of impairments in Appendix 1 "describes for each of the major body systems impairments that we consider to be severe enough to prevent an

based on a mental health disorder must satisfy the following "Paragraph B" criteria:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
>
> 2. Interact with others (see 12.00E2).
>
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Here, the record shows that the ALJ did consider Claimant's somatization symptoms while assessing Plaintiff's other mental impairments at step three, despite failing to explicitly identify Listing 12.07. (*See* AR 195-96.) Specifically, the ALJ provided the following analysis related to Plaintiff's somatization symptoms:

> The claimant's primary difficulty noted in the mental health records is a hyper-focus on pain, accompanied by pain behaviors during mental health sessions. However, mental status examination findings generally indicate benign findings other than those pain behaviors. . . . The claimant's treating providers do not express any concern regarding the claimant's ability to understand and carry out treatment recommendations. Overall, the evidence supports no more than 'moderate' restriction concentrating, persisting or maintaining pace.

(AR 196). Further, the ALJ found that, based on Claimant's overall symptoms, which *included his perceived pain*, he did have a moderate restriction in function three, involving concentration, persistence, and maintaining pace.

To the extent Plaintiff argues that the ALJ's findings at step three would have been different if the ALJ had explicitly identified Listing 12.07, that argument also fails. A claimant "bears the burden of proving that. . . []he has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations."

---

individual from doing any gainful activity." 20 C.F.R. § 404.1425(a). Each listing may "include specific criteria for establishing a diagnosis, confirming the existence of an impairment, or establishing that your impairment(s) satisfies the criteria of a particular listing." 20 C.F.R. § 404.1425(c). Impairments can meet the requirements of a listing when they satisfy "all of the criteria of that listing" or when they "medically equal" the criteria of a listing. *Id.* An impairment, however, does not meet "the criteria of a listing based only on a diagnosis," but rather the claimant must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1425(d).

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). The mere diagnosis of an impairment listed in Appendix 1 is insufficient to sustain a finding of disability; the impairment "must also have the findings shown in the Listing of that impairment." *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (citing 20 C.F.R. § 404.1525(d)); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("existence of emotional disorder, however, is not per se disabling;" "there must be proof of the impairment's disabling severity"). Moreover, the ALJ has wide discretion in the articulation of the listing analysis. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (affirming an ALJ's listing analysis, despite the ALJ's omission of necessary findings in that section of the decision, because the ALJ provided sufficient reasoning elsewhere in the opinion for his conclusion).

Here, outside of the third factor discussed above, the ALJ found only mild or no limitations in his evaluation of the other three factors (AR 196-97), and Plaintiff presents no showing that those determinations by the ALJ would change even if Listing 12.07 had been explicitly considered (*see* doc. 13). Furthermore, Plaintiff does not articulate how the ALJ exceeded his considerable discretion in the articulation of the listing analysis. *See Lewis*, 236 F.3d at 514 (rejecting a claimant's argument that the ALJ had failed to adequately explain his finding that the claimant's impairments did not equal a listed impairment because "[claimant] has offered no theory, plausible or otherwise, as how his [impairments] combined to equal a listed impairment."). Accordingly, the Court finds that the ALJ did not err in his evaluation of Claimant's mental impairments at step three.

      **B.**    **The ALJ did not Err in his Determination of Plaintiff's RFC.**

Plaintiff argues that the ALJ "erred in failing to fully account for [Claimant's] somatization disorder in the RFC finding, despite finding it to be one of [Claimant's] 'severe' impairments." (Doc. 13 at 11.) Specifically, Plaintiff argues that "[*a*]*t the very least*, the record demonstrates that Plaintiff's preoccupation with his pain would result in him being off-task during an 8-hour workday" but "[d]espite this evidence, . . . the ALJ did not include an off-task limitation in his RFC finding." (*Id.* at 13.) To the extent Plaintiff argues that the ALJ erred in his ultimate RFC determination, Plaintiff's argument fails.

In the Social Security context, it is a claimant's burden to prove that he is disabled. *See* 42 U.S.C. § 423(d)(5), *Bayliss*, 427 F.3d at 1217. But the ALJ is responsible for establishing a claimant's RFC, based on both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545-404.1546; *accord* Social Security Ruling (SSR) 96-8p. In assessing a claimant's RFC, the ALJ must consider all of the evidence of record, including a claimant's subjective testimony, the treatment records, and the medical opinions of record. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945.

Here, when evaluating Claimant's RFC, the ALJ engaged in a thorough discussion of Plaintiff's medical history, records, symptom testimony, and considered all Claimant's impairments in combination. (*See* AR 194-214.) Notably, the ALJ meticulously described and evaluated Plaintiff's symptoms most closely associated with somatization disorder, including Plaintiff's reports of pain (AR 199-208)[2], and mental health concerns (AR 208-

---

[2] Citing AR 633 (April 2014 Exam – Claimant received bilateral hip injections for pain, and complained of of neck pain and headaches); AR 647-48 (February 2014 Exam – Claimant described "sharp, 10/10 in severity spasms in the right side of his neck[,]" but the examining physician noted that "[h]is pain seemed way out of proportion to the description of the injury[.]"); AR 1175 (June 2014 progress notes – April 2014 examination found a red mark at the base of Claimant's thoracic spine that appeared to be chronic in nature; noting that the provider, Dr. Konowalchuk entered claimant into a rehabilitation and conditioning program, the "SpineX" program); AR 638 (July 2014 Exam – Claimant reported pain in his back, neck, ankle, and head. The exam notes indicate that Claimant had not followed through after being referred to a spine conditioning program for treatment of chronic back pain, and Claimant had stopped attending recommended physical therapy because of "lack of motivation"); AR 640-41 (September 2014 Exam – Claimant reported that instead of going to physical therapy as recommended, he did his own stretches at home and that he "does not need much therapy," but also that "it hurts to much to get out of bed and make his appointments." Claimant's physician advised Claimant that he was "not homebound and that there was no reason he could not make the appointments"); AR 1094 (September 2014 Exam Notes – Claimant continued complaints of chronic back pain, admitted to self-medicating through the use of "Lortab off the street" and "taking methamphetamine to help."); AR 643-44 (December 2014 Exam – Claimant continued complaints of chronic back pain, admitted to self-medicating through the use of "Lortab off the street" and "taking methamphetamine to help;" the provider notes that review of Claimant's prior MRIs have come back "unremarkable"); AR 1097 (December 2014 examination where claimant reported to have "no motivation to get out of bed" and make his appointments, and that he had failed to follow through with the referral to the pain clinic for further management, but continued to complain of pain with no significant radicular symptoms); AR 677-79 & 1180-82 (January 2015 Exam – Dr. Stefan Kaiser notes Claimant stated he was chemically coping with the pain, that he "reported a curious history of localized pain in his back without any corresponding objective findings," and noted that Claimant has mental health disorders that may have been exhibiting a functional overlay secondary to underlying psychological disorder, compounded by multiple illicit abuse); AR 674-76 (March 2015 Exam - Records from 2013 and 2015 indicating that imaging of Plaintiff's thoracic and lumbar spine were reasonably within normal limits, with only

13)[3].

Plaintiff argues that the ALJ's discussion of Plaintiff's symptoms alone is insufficient, and that the ALJ was required to "provide a logical bridge between his finding that Plaintiff's somatization disorder is a severe impairment" and "failing to fully account for this impairment in his RFC finding." (Doc. 13 at 13-14.) In support of his position, Plaintiff relies on the Ninth Circuit's decision in *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), (doc. 13 at 13), which states:

> [A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,'. . . we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review. A

---

minimal signs of degeneration and no stenosis); AR 1188 (March 2015 Exam - Dr. Kaiser explaining to Claimant that his essentially normal imaging findings did not explain the intensity of Claimant's pain behaviors).

[3] Citing AR 678 & 1182 (January 2015 Exam – Claimant described chronic depression and using amphetamines to improve his ambition); AR 640-41 (September 2014 Exam - Claimant reported depression, and self-medicating to help his back); AR 643 (December 2014 Exam – Indicating that Claimant's antidepressant medication had been discontinued due to lack of improvement); AR 703-11 (February 2015 Diagnostic Assessment Standard Exam Session Information – discussing Claimant's mental health issues and symptoms including depression, anxiety, learning disability, excessive sleep, self-isolation, and low self-esteem; noting that Claimant had been receiving mental health therapy through Adult Rehabilitative and Mental Health Services (ARMHS); evaluating Claimant's ability to function through both clinical and self- assessments); AR 723 (June 2015 Progress Note – noting that Claimant had shown up late for his appointment, after drinking, and that Claimant believed "medical issues prevent [Claimant] from benefiting from psychotherapy," and placed hold on further psychotherapy appointments until Claimant was "more able to focus and apply self"); AR 727-45 (March-April 2015 Psychotherapy Progress Notes – detailing Claimant's lack of motivation and failure to complete "homework" from therapy); AR 773-782 (July-August 2015 Mental Status Examinations with Jason Nelson, CNP – diagnosing Claimant with major depressive disorder); AR 832 (December 2015 Emergency Room Visit – Claimant called 911, self-reporting suicidal ideation, and was found by law enforcement "near the water's edge with his pockets filled with rocks" and a BAC of 0.113; Claimant reported that "he has been suicidal for 2 years secondary to uncontrolled chronic back pain despite treatment"; Claimant was admitted to an acute mental health unit for monitoring); AR 838-41 (December 2015 Discharge Summary – describing Claimant as vague and avoidant during his stay in the acute mental health unit, and "spent most of his time lying in bed with his head covered often heard to be snoring"); AR 851-59 (June-August 2016 Medication Checks with Dr. Jason Nelson – Claimant's subjective responses to questionnaire were indicative of severe depression, and Claimant reported most of his symptoms were a result of his chronic pain); AR 886-93 (January 2017 Diagnostic Assessment Update – diagnosing Claimant with *inter alia* Somatic Symptom Disorder, and recommending Claimant receive ARMHS services and case management); AR 1478 (December 2017 Exam with Dr. Erik Sather – Claimant reported severe depressive symptoms, pain, and anxiety; Claimant agreed to retry medication he had previously stopped taking); AR 1633-34 (January 2018 Follow Up Call with Dr. Sather – Claimant's medications increased) AR 1670-71 (January 2018 - Claimant referred to Pain Rehabilitation specialist for February 2018 appointment – no indication that Claimant ever attended).

clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).

*Brown-Hunter*, 806 F.3d at 492. But *Brown-Hunter* is inapposite. In that case, the Court found legal error where an ALJ had discounted a claimant's symptom testimony after providing only a conclusory finding and a summation of the medical record. *See id.* at 494 (finding legal error where the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited."). But here, unlike in *Brown-Hunter*, Plaintiff is not challenging the weight afforded by the ALJ to Claimant's symptom testimony.

Instead, the Court need only review whether the ALJ considered the combined effect of "all medically determinable impairments." *See* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity. . . , the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity."); *Orn*, 495 F.3d at 630 ("because [claimant] had a severe medically determinable impairment, 'all medically determinable impairments must be considered in the remaining steps of the sequential analysis.'"). The ALJ's comprehensive discussion of the record, including his detailed summary of Plaintiff's symptoms most closely associated with somatization disorder, makes clear that the ALJ considered all medically determinable impairments in his determination of Plaintiff's RFC. (*See* AR 193-216).

**C.     The ALJ did Err in Classifying Ms. Sternal as a Non-Acceptable Medical Source.**

Plaintiff next argues that the ALJ improperly weighed the medical opinion of Ms. Lori Sternal, LP MA. Specifically, Plaintiff argues that "[t]he ALJ erred in classifying LP Sternal as a non-acceptable medical source; this classification is erroneous." (Doc. 13 at

- 9 -

14.)[4] Defendant concedes that the ALJ's classification of Ms. Sternal was "incorrect," but contends that it "is not a basis for finding reversible error." (Doc. 18 at 18.) The Court disagrees.

Defendant argues the error is harmless because "the ALJ considered Plaintiff's other mental impairments and considered the entire constellation of psychological symptoms . . . in determining [Claimant's RFC].' (AR 195)." (Doc. 18 at 19.)

> Any error by the ALJ's categorizing Ms. Sternal as not an acceptable medical source for purposes of establishing diagnosis of antisocial personality disorder, was harmless, given that the ALJ considered all of Plaintiff's psychological symptoms – whether linked to the antisocial personality disorder diagnosis or not – in assessing Plaintiff's RFC (AR 195; *see generally* AR 194-214; *see also* AR 681-683 (treatment providers finding that Plaintiff was malingering antisocial behavior in May 2013)). *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ"'s error was inconsequential to the ultimate nondisability determination") (citations omitted). As discussed in Argument B, the ALJ found that Plaintiff had only mild limitation in interacting with others and was not precluded from mentally performing simple routine tasks and making only simple work-related decisions.

(Doc. 18 at 19.) Defendant's argument is not persuasive.

It is undisputed that the ALJ's improper classification of Ms. Sternal resulted in the ALJ concluding that antisocial personality disorder is not a medically determinable impairment of Claimant. (*See* AR 195 ("Ms. Sternal is not an acceptable medical source for the purposes of [t]he diagnosis of antisocial personality disorder" and "the evidence does not support this is diagnosed elsewhere.").)

What is more, the Court cannot measure what impact the ALJ's erroneous classification had on the weight given to her medical opinions in this action. As stated by Plaintiff, "the ALJ gave no obvious consideration to LP Sternal's status as a legitimate acceptable medical source when he evaluated her opinion in accordance with 20 C.F.R. §

---

[4] Ms. Sternal first treated Claimant on February 12, 2015. (AR 703). Ms. Sternal continued treating Claimant until at least June 2015 (AR 723), and completed a Diagnostic Assesment Update in January2017 (AR 886-93). Ms. Sternal's extensive notes cover Claimant's prior physical, family, and mental health history. (AR 703-23). Ultimately, Ms. Sternal diagnosed Claimant with the following clinical disorders: major depressive disorder recurrent moderate, alcohol dependence, cannabis dependence, amphetamine dependence, opioid abuse, and antisocial personality disorder. (AR 886-93).

- 10 -

404.1527." (Doc. 13 at 15.) Thus, despite Defendant's contention to the contrary, the Court cannot rely on the fact that the ALJ found that Claimant had only mild limitations interacting with others, and was not precluded from mentally performing simple routine tasks (doc. 18 at 19); the ALJ made those findings in the context of an opinion where the ALJ did not consider the Ms. Sternal to be an acceptable medical source. Any speculation by the Court as to what the ALJ may have found if he had properly classified Ms. Sternal as an acceptable medical source would constitute an improper post hoc rationalization of the ALJ's opinion. The ALJ's failure to properly classify Ms. Sternal as an acceptable medical source is reversable error. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Accordingly, the Court finds that the ALJ erred by classifying Ms. Sternal as a non-acceptable medical source.

### D.  The ALJ Did Not Err in Failing to Consider Mr. Ruzic's Statement.

Lastly, the ALJ did not err in giving little weight to the statement of Jeremy Ruzic, Claimant's case manager through the Human Development Center. Under 20 C.F.R. § 404.1520, the Social Security Administration states it "will consider all evidence in your case record when we make a determination or decision whether you are disabled." 20 C.F.R. § 404.1520. Consequently, "[i]n making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Id.* (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." *Id.* Here, Mr. Ruzic's statement is neither significant nor probative. Accordingly, the ALJ did not err in discounting Mr. Ruzic's opinion.

**V.      Remand.**

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, the Court determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The Court will remand for further proceedings because there is uncertainty in the record. The ALJ provided a thorough and detailed opinion as to why Claimant was not disabled under the Social Security Act, but the ALJ failed to properly classify one of Plaintiff's treating medical sources as an acceptable medical source. On remand the ALJ must reweigh the properly credited, conflicting evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**IT IS ORDERED** that the ALJ's decision be **vacated** and **remanded for further proceedings** consistent with this opinion. The Clerk is directed to terminate this case.

Dated this 27th day of May, 2020.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge